843 F.2d 502
 Unpublished Disposition
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 
 John SMITH, Petitioner-Appellant
v.
George SUMNER, Attorney General for the State of Nevada,
Respondent-Appellee.
 No. 87-1500.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 8, 1988.*
Decided March 24, 1988.
 Before EUGENE A. WRIGHT, WALLACE and NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 John Smith attempted to withdraw a guilty plea for second degree murder. He filed this Habeas Corpus petition alleging four grounds of relief: (1) ineffective assistance of counsel violated his sixth amendment rights; (2) his guilty plea was involuntary; (3) Carlson's recanted testimony provides clear evidence of his innocence; and (4) the grand jury indictment on which his conviction was based was invalid because it was based on testimony of petitioner's wife in violation of the spousal privilege. The district court denied the habeas petition. We affirm.
 
 A. Standard of Review
 
 3
 The district court's denial of a petition for Habeas Corpus is reviewed de novo. See Roberts v. Corrothers, 812 F.2d 1173, 1178 (9th Cir.1987). State court findings of fact are afforded great deference, though state court decisions of mixed questions of fact and law and of law are reviewed de novo. See Chizen v. Hunter, 809 F.2d 560 (9th Cir.1986).
 
 B. Ineffective Assistance of Counsel
 
 4
 In order to prove a sixth amendment violation based on ineffective assistance of counsel, a defendant must prove both that counsel's representation fell below an objectively reasonable standard by showing that the attorney acted outside the range of professionally competent assistance, and that the ineffective assistance prejudiced the petitioner. See Strickland v. Washington, 466 U.S. 668 (1984). In the context of plea bargaining, the prejudice requirement mandates that the petitioner show a reasonable possibility that he would not have pleaded guilty had he received adequate representation. See Hill v. Lockhart, 474 U.S. 52, 59 (1985). For example, if petitioner alleges that counsel failed adequately to investigate, courts must inquire whether investigation would probably have revealed information that would lead competent counsel to recommend proceeding to trial, which in turn requires considering whether the information would have permitted petitioner to succeed at trial. Id. at 59-60.
 
 
 5
 Smith raises five reasons for believing his representation was ineffective. We find that Smith has failed to prove either objectively unreasonable performance or prejudice on any of his five claims.
 
 
 6
 First, Smith claims that his attorney failed adequately to investigate his case because the attorney did not hire an investigator to interview witnesses who might be found at Mark Smith's apartment building. According to petitioner, witnesses could have been found to testify that Mark Smith left with Carlson voluntarily. Petitioner argues that this testimony would have disproved the charge of kidnapping, and that because the government's only plausible theory for charging first degree murder was a felony-murder theory, the evidence would also have disproved the murder charge.
 
 
 7
 We disagree. According to the state court reviewing Smith's motion to withdraw his plea, Smith's lawyer spent 122 hours working on this case, and the lawyer interviewed all of the crucial witnesses. Presumably these witnesses included anyone prepared to testify for the state that Mark Smith did not leave voluntarily. Having interviewed these witnesses to determine the strength of the state's case, the attorney fulfilled a reasonable obligation to investigate. The state court also found that even without a felony-murder theory, the state had substantial evidence of premeditation on the basis of which it could have obtained a first degree murder conviction. Therefore the decision not to investigate potential defenses to the kidnapping charge could simply have been a strategic choice based on the conclusion that a defense to kidnapping could not be useful if the state could prove premeditated murder. Such strategic choices should not be viewed in hindsight as objectively unreasonable. See Strickland, 466 U.S. at 691. Furthermore, petitioner cannot demonstrate prejudice. Faced with the testimony of Jerry Carlson, and a reasonable possibility of conviction for first degree murder based on premeditation, petitioner might reasonably have pleaded guilty even if he could have disproven the kidnapping charge.
 
 
 8
 Second, petitioner argues that his representation was inadequate because counsel failed to prepare a defense based on alcoholism and intoxication, leading to a lack of criminal intent. However, petitioner does not indicate why such a defense should have been effective. In order to succeed in defending himself based on intoxication, petitioner would have had to prove that he was so drunk that he was unable to understand his actions or to form an intent to participate in the crimes. See United States v. Lemon, 550 F.2d 467, 470 n. 1 (9th Cir.1977). Without any evidence of drunkenness, this defense would be extremely unlikely to succeed. Therefore because it is not the normal practice of lawyers to advise their clients of every defense or argument or tactic that while theoretically possible is hopeless as a practical matter, failing to prepare this defense falls within the range of reasonable professional service. Furthermore, because the defense seems so unlikely to have succeeded, petitioner has not demonstrated prejudice.
 
 
 9
 Third, petitioner asserts that his attorney's failure to move for dismissal of the charges constitutes ineffective assistance of counsel. However, this allegation cannot meet either of the Strickland tests. The evidence against Smith, although not overwhelming, was significant. He drove the car, and helped dispose of the body, and his co-petitioner was willing to testify that Smith wanted to kill the victim, knew about the gun in the car, and considered the victim an informant and his wife's lover. Certainly this evidence was sufficient to withstand a motion to dismiss. Therefore, a reasonable attorney would not necessarily have made the motion, and the petitioner was not prejudiced.
 
 
 10
 Fourth, petitioner argues that his counsel should have moved to suppress certain statements made by petitioner's wife to the grand jury, because using these statements against petitioner violated the spousal privilege. In order to have the charges against him dropped on this basis, petitioner would have needed to prove that the testimony was privileged. In general, the spousal privilege not to testify may only be asserted by the testifying spouse, not by the criminal petitioner. See Trammel v. United States, 445 U.S. 40 (1980). Because petitioner does not suggest that his wife testified against him unwillingly, he could not have prevailed by asserting the privilege. Furthermore, in order to defeat a grand jury indictment based on the grand jury's exposure to inappropriate information, petitioner would have been required to show that the grand jury lacked other non-privileged testimony that could have formed the basis for the indictments. See United States v. Bracy, 566 F.2d 649 (9th Cir.1977); United States v. Basurto, 497 F.2d 781 (9th Cir.1974). Petitioner has not demonstrated that the Grand Jury lacked another basis for the decision to indict, and has therefore failed to demonstrate prejudice from the failure to move for suppression.
 
 
 11
 Finally, appellant argues that he did not receive effective assistance of counsel because his attorney misinformed him of the potential length of his sentence under the plea bargain. Certainly misinforming a client of his potential sentence falls below any objective standard of competent legal service. However, petitioner cannot demonstrate prejudice because before accepting his plea, the court explicitly informed him "you understand that the sentences in the two cases could run consecutive[ly]; in other word, you could receive say life plus ten years?" Smith responded "I understand that, yes." Therefore, appellant was not prejudiced, because once informed of the correct sentence potential, he chose to plead guilty nonetheless.
 
 C. Voluntariness
 
 12
 Petitioner argues that his guilty plea should not be binding because it was not voluntary. If a guilty plea is induced by promises or threats that make it involuntary or if it is not an intelligent choice among available alternatives, it is invalid. See North Carolina v. Alford, 400 U.S. 25 (1970); Machibroda v. United States, 368 U.S. 487 (1962). Petitioner presents three reasons for believing that his plea was involuntary. We find none persuasive.
 
 
 13
 First, petitioner argues that his plea was involuntary because he received ineffective assistance of counsel. This argument does not raise any issues not raised by petitioner's ineffective assistance of counsel claims, and therefore does not require separate treatment.
 
 
 14
 Second, appellant argues that his plea was involuntary because he did not understand that he could be sentenced to more than ten years in prison. Were this claim true, petitioner would be entitled to withdraw his plea. See Chizen v. Hunter, 809 F.2d 560 (9th Cir.1986); Pebworth v. Conte, 489 F.2d 266 (9th Cir.1974). However, the court that accepted petitioner's guilty plea explained to him that he could be sentenced to as much as life plus ten years. Petitioner has not suggested any reason for thinking that he did not understand the court's very plain statement.
 
 
 15
 Third, petitioner argues that his plea was coerced by the prosecutor, who threatened to charge petitioner's wife as an accessory to the crime. A threat to prosecute a third party does not automatically invalidate a guilty plea, though it does pose a danger of coercion. Bordenkircher v. Hayes, 434 U.S. 357, 364 n. 8 (1978). Of course, this danger of coercion increases when the third party is related to the petitioner. See, e.g., United States v. Castello, 724 F.2d 813, 815 (9th Cir.1984); Johnson v. Wilson, 371 F.2d 911 (9th Cir.1967).
 
 
 16
 On January 3, and August 6, 1984, the Nevada state court heard testimony concerning this threat. In considering this testimony, the state judge concluded that he was inclined to believe the prosecutor and to disbelieve the petitioner regarding the plea negotiations. This seems to be a factual finding that the prosecutor did not threaten the petitioner. Appellant has shown us nothing in the record that demonstrates that the District Attorney did threaten to charge Smith's wife unless Smith pled guilty.
 
 D. Current Testimony of Co-Petitioner
 
 17
 Petitioner contends that he should be permitted to withdraw his guilty plea because new evidence indicates his innocence, and that keeping him in prison is therefore manifestly unjust. The new evidence that petitioner believes exonerates him consists in an affidavit by Jerry Carlson stating that: (1) petitioner never discussed killing Mark Smith with Carlson; (2) petitioner did not know about the gun in the car; and (3) there were numerous other unspecified errors in Carlson's prior statement. The state court reviewing these statements found them to be unbelievable. Courts have often taken this skeptical view of recanted testimony attempting to exculpate co-petitioners. Cf. United States v. Johnson, 327 U.S. 106, 110-12 (1946) (recanted testimony of government witness).
 
 
 18
 Petitioner was entitled to a hearing to determine whether this new evidence was credible, and if so whether it demonstrated manifest injustice. See Castello, 724 F.2d at 814-15. However, trial judges have broad discretion in deciding whether new evidence is credible. See United States v. Panza, 612 F.2d 432 (9th Cir.1979). In this case, although Carlson's testimony does greatly affect the possibility of petitioner's guilt, the state court's decision that it was inherently unreliable is not clearly erroneous. He is therefore not entitled to withdraw his plea.
 
 E. Testimonial Privilege
 
 19
 Petitioner finally contends that he should be allowed to withdraw his guilty plea because the grand jury indicted him based on his wife's testimony, in violation of the spousal privilege. Petitioner may not raise this issue, however, because guilty pleas foreclose habeas consideration of grand jury violations. See Tollett v. Henderson, 411 U.S. 258 (1973). In addition, because his wife voluntarily offered this testimony, it was not a violation of the privilege to use the testimony against Smith. See Trammel, 445 U.S. at 53.
 
 
 20
 For the reasons explained above, we AFFIRM.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3